**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| |
|---|
| COLUMBUS LIFE INSURANCE COMPANY, |
| Plaintiff, |
| v. |
| WILMINGTON TRUST, N.A., as Securities Intermediary, |
| Defendant. |

C.A. No. 20-735-MN-JLH

## REPORT AND RECOMMENDATION

This dispute arises out of an insurance policy on the life of Anthony Romano. Plaintiff Columbus Life Insurance Company says that the policy is an illegal stranger-originated life insurance ("STOLI") policy, and it seeks a declaration from the Court that the policy is void *ab initio*. Defendant Wilmington Trust, N.A. says that the policy is valid. Defendant has also pleaded a number of affirmative defenses as well as various contract, tort, and estoppel counterclaims. Those affirmative defenses and counterclaims are at issue here.

For the reasons explained below, I recommend that Columbus Life's Motion to Strike Wilmington Trust's Affirmative Defenses (D.I. 16) be GRANTED. I recommend that Columbus Life's Motion to Dismiss Wilmington Trust's Counterclaims (D.I. 15) be GRANTED-IN-PART and DENIED-IN-PART.

## I. BACKGROUND

"Since the initial creation of life insurance during the sixteenth century, speculators have sought to use insurance to wager on the lives of strangers." *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr., ex rel. Christiana Bank & Tr. Co.*, 28 A.3d 1059, 1069 (Del. 2011) ("*Price Dawe*"). In response to the practice, the law developed a requirement that a person seeking to take out a life

insurance policy on another have some reason to want the insured to remain alive. That concept is now known as the "insurable interest" requirement. The United States Supreme Court has articulated the public policy behind the requirement as follows:

> [T]here must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy.

*Warnock v. Davis*, 104 U.S. 775, 779 (1881) (emphasis added); *see also Price Dawe*, 28 A.3d at 1069 (quoting *Warnock*); *Baltimore Life Ins. Co. v. Floyd*, 91 A. 653, 656 (Del. Super. Ct. 1914), *aff'd,* 94 A. 515 (1915) ("To avoid [the situation] in which a beneficiary may become interested in the early death of the insured, it is held that the insurance upon a life shall be effected and resorted to only for some benefit incident to or contemplated by the insured, and that insurance procured upon a life by one or in favor of one under circumstances of speculation or hazard amounts to a wager contract and is therefore void, upon the theory that it contravenes public policy.").

Like most states, Delaware has an insurable interest requirement. *Price Dawe*, 28 A.3d at 1069-70. Pursuant to 18 Del. C. § 2704(a), subject to certain exceptions, "[1] [a]ny individual of competent legal capacity may procure or effect an insurance contract upon his or her own life or body for the benefit of any person, [2] but no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable [i] to the individual insured or his or her personal representatives or [ii] to a person having, at the time when such contract was made, an insurable interest in the individual insured." 18 Del. C. § 2704(a); *Price Dawe*, 28 A.3d at 1073. The first clause says that a person

may take out an insurance policy on his own life and make it payable to anyone, even a stranger. *Price Dawe*, 28 A.3d at 1073. The second clause says that, if a policy is taken out on the life of another, the benefits must be payable to either (i) the person insured or his/her personal representative or (ii) someone who, at the time the insurance contract was made, had an "insurable interest" in the insured. *Id.* The statute defines those with an "insurable interest" to include, among others, "individuals related closely by blood or by law [who have a] substantial interest engendered by love and affection," the trustee of a trust created and funded by the insured, and other individuals with "a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue." 18 Del. C. § 2704(c).

The Delaware insurable interest statute does not bar a person from taking out a policy on his own life in good faith and then transferring it to someone without an insurable interest. *Price Dawe*, 28 A.3d at 1068, 1074. Because life insurance policies have value, and it is legal to transfer them, a secondary market for them has emerged. Over time, however, increased market demand for high-dollar policies led to some undesirable effects, as the Delaware Supreme Court concisely explained in 2011:

> Over the last two decades [prior to 2011], . . . an active secondary market for life insurance, sometimes referred to as the life settlement industry, has emerged. This secondary market allows policy holders who no longer need life insurance to receive necessary cash during their lifetimes. The market provides a favorable alternative to allowing a policy to lapse, or receiving only the cash surrender value. The secondary market for life insurance is perfectly legal. Indeed, today it is highly regulated. In fact, most states have enacted statutes governing secondary market transactions, and all jurisdictions permit the transfer or sale of legitimately procured life insurance policies. Virtually all jurisdictions, nevertheless, still prohibit third parties from creating life insurance policies for the benefit of those who have no relationship to the insured. These policies, commonly known as "stranger originated life insurance," or STOLI, lack an insurable interest and are thus an illegal wager on human life.

> In approximately 2004, securitization emerged in the life settlement industry. Under this investment method, policies are pooled into an entity whose shares are then securitized and sold to investors. Securitization substantially increased the demand for life settlements, but did not affect the supply side, which remained constrained by a limited number of seniors who had unwanted policies of sufficiently high value. As a result, STOLI promoters sought to solve the supply problem by generating new, high value policies.

*Price Dawe*, 28 A.3d at 1069-70. Since STOLI promotors could not legally take out life insurance policies for the benefit of investors who lacked an insurable interest, they concocted various schemes to conceal what they were up to. The details of the schemes vary, but the basic idea is that a "stranger" persuades a senior citizen to obtain a life insurance policy on his own life so that the policy can subsequently be transferred and sold in the market. To induce the senior to participate, the stranger may fund the policy premiums and may even pay compensation to the senior. *Price Dawe*, 28 A.3d at 1076.

In its seminal decision in *Price Dawe* in 2011, the Delaware Supreme Court held that life insurance policies procured via STOLI schemes violate the Delaware insurable interest requirement. According to the Court, "if [a] third party uses the insured as an instrumentality to procure [a life insurance] policy, then the third party is actually causing the policy to be procured, which the second clause of section 2704(a) proscribes." *Id.* at 1074. The Court further held that STOLI policies were void *ab initio*[1] because they violate Delaware's public policy against wagering and, thus, cannot be enforced, "no matter what the intentions of the parties." *Id.* at 1067-68.

---

[1] "*Ab initio*" means "from the beginning." Black's Law Dictionary (11th ed. 2019).

## II.    FACTUAL ALLEGATIONS[2]

At issue in this action is a $5 million insurance policy on the life of Anthony Romano.

On June 24, 2004, Mr. Romano applied to Plaintiff Columbus Life Insurance Company ("Columbus Life") for a life insurance policy on his own life (the "Policy").  (D.I. 10 ("Ans."), Counterclaims ("CC") ¶¶ 3, 18.)  He set up a trust to be the owner and beneficiary of the Policy.  (*Id.* ¶¶ 3, 20.)  Columbus Life issued the Policy with the effective date backdated to May 23, 2004.  (*Id.* ¶ 18.)

The ownership and beneficial interest in the Policy was transferred several times.  (*Id.* ¶¶ 22, 24, 26.)  The latest transfer occurred in December 2016, when Defendant Wilmington Trust, N.A. ("Wilmington Trust") submitted a change of ownership and beneficiary request.  (*Id.* ¶ 27.)  Columbus Life approved the transfer and it became effective on February 14, 2017.  (*Id.*)

When Wilmington Trust acquired the Policy, it was unaware that it was a STOLI policy.  (*Id.* ¶¶ 28, 55.)  At the time of the transfer, Columbus Life did not indicate that it believed the Policy was void *ab initio* or that Wilmington Trust would not be entitled to payment of the death benefit.  (*Id.* ¶ 28.)  At some point, Columbus Life became suspicious that the Policy was illegal, but rather than reveal its suspicions, it continued to bill for and collect premium payments from Wilmington Trust.  (*Id.* ¶¶ 23, 29-33, 61.)  Columbus Life also sent Wilmington Trust notices of premiums due and other notices, all of which suggested to Wilmington Trust that the Policy was valid and that Columbus Life would pay the death benefit when Mr. Romano died.  (*Id.* ¶¶ 28-29, 34-35.)  In addition, Wilmington Trust "relied on the fact that Columbus's approvals of the

_____

[2] I assume the facts alleged in Defendant's Counterclaims to be true for purposes of resolving the motion to dismiss them for failure to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

ownership and beneficiary changes on the Policy meant that the Policy would not be challenged when Mr. Romano died or at any other time." (*Id.* ¶ 28.)

Since the Policy's issuance in 2004, Columbus Life has collected more than $5.4 million in premiums from Wilmington Trust and its predecessors. (*Id.* ¶ 37.) However, on July 19, 2019, Columbus Life sent Wilmington Trust a letter indicating that it was investigating whether the Policy was an illegal STOLI policy. (*Id.* ¶ 35.)

Columbus Life filed this action on May 30, 2020. According to the Complaint, the Policy was obtained as part of a STOLI scheme and is therefore void. (D.I. 1, Ex. A ("Compl.") ¶¶ 27-30.) The Complaint contains two counts. The first seeks a declaration that the Policy is void *ab initio* because it is an illegal human life wagering contract that violates the Delaware Constitution and state public policy. (*Id.* ¶¶ 34-38.) The second count seeks a declaration that the Policy is void *ab initio* for lack of an insurable interest under the Delaware insurable interest statute, 18 Del. C. § 2704. (*Id.* ¶¶ 39-44.)

Wilmington Trust's Answer denies that the Policy is void. (Ans. ¶¶ 27-30, 38.) It further alleges that "Columbus has known for years of all of the circumstances supporting its allegations" that the Policy is void, but "concealed [its] plan [to challenge the Policy's validity] . . . so it could continue to collect premiums believing it was doing so risk-free because it did not intend to pay the death benefit on the Policy." (*Id.*, CC ¶¶ 33, 36.)

Wilmington Trust's Answer sets forth five "affirmative defenses": "failure to state a claim" (First Defense); "laches" (Second Defense); "waiver and estoppel" (Third Defense); "unclean hands" (Fourth Defense); and "additional defenses" (Fifth Defense). The Answer also contains five counterclaims. Count I is a breach of contract claim alleging that Columbus Life violated the no contestability clause of the Policy by contesting its validity more than two years after its

effective date.  (CC ¶¶ 48-43.)  Count II alleges "breach of the implied covenant of good faith and fair dealing and bad faith."  (*Id.* ¶¶ 44-51.)  Count III is pleaded in the alternative and alleges promissory estoppel.  (*Id.* ¶¶ 52-58.)  Count IV, also alleged in the alternative, seeks an automatic return of premiums or restitution for unjust enrichment.  (*Id.* ¶¶ 59-64.)  Count V alleges negligent misrepresentation.  (*Id.* ¶¶ 65-71.)

On September 1, 2020, Columbus Life filed a motion to strike Wilmington Trust's Second, Third, and Fourth affirmative defenses (D.I. 16), and it filed a separate motion to dismiss Counts III, IV, and V of Wilmington Trust's counterclaims (D.I. 15).  Those motions are presently pending before the Court.  I heard oral argument on both motions on March 2, 2021 ("Tr.").

## III.  LEGAL STANDARDS

### A.  Motion to Strike

"As a general matter, motions to strike under Rule 12(f) are disfavored."  *Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n,* 722 F. Supp. 2d 496, 502 (D. Del. 2010) (citing *Seidel v. Lee,* 954 F. Supp. 810, 812 (D. Del. 1996)).  A court should not grant a motion to strike a defense from a pleading unless it is clearly insufficient.  *Celgene Corp. v. Fresenius Kabi USA, LLC*, No. 14-571-RGA, 2015 WL 8023233, at *2 (D. Del. Dec. 7, 2015).  A defense may be deemed insufficient if "it is not recognized as a defense to the cause of action," and it can be stricken on the basis of the pleadings alone if it "could not possibly prevent recovery under any pleaded or inferable set of facts." *In re ASHINC Corp.*, No. 12-11564, 2017 WL 2774736, at *5 (D. Del. June 27, 2017) (quoting *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 93 (D.N.J. 2014)).

### B.  Motion to Dismiss

A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "[C]ourts use the same standard in ruling on a motion to dismiss a

counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *Lieberman v. BeyondTrust Corp.*, No. 1:19-1730-RGA, 2020 WL 1815547, at *1 (D. Del. Apr. 9, 2020) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id.* at 679.

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

## IV. DISCUSSION

### A. Wilmington Trust's Affirmative Defenses

Columbus Life wants the Court to strike three of Wilmington Trust's defenses: laches; waiver and estoppel; and unclean hands. Wilmington Trust contends that Columbus Life's claims are barred by the doctrine of laches because it "inexcusably delayed filing its claims for sixteen years." (Ans. at 15.) As to waiver and estoppel, Wilmington Trust contends that Columbus Life has "waived" its right to challenge, and/or is "estopped" from challenging, the validity of the

Policy. (Ans. at 15.) Finally, Wilmington Trust alleges that Columbus Life is "barred by the doctrine of unclean hands" from obtaining a declaration of unenforceability. (Ans. at 16.)

Columbus Life argues that the doctrines of laches, waiver, estoppel, and unclean hands cannot be used to prevent a challenge to a void *ab initio* life insurance policy. Columbus Life is not saying that the defenses are insufficiently pleaded as a technical matter. Instead it contends that, no matter what facts are discovered, the doctrines of laches, waiver, estoppel, and unclean hands have no application here, and the defenses should therefore be stricken. I agree.

Estoppel is an equitable doctrine that may permit enforcement of a promise notwithstanding the non-occurrence of a contract condition. *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12-13 (Del. 2000) (discussing promissory and equitable estoppel); *First Fed. Sav. & Loan Ass'n of New Castle Cty. v. Nationwide Mut. Fire Ins. Co.*, 460 A.2d 543, 545-46 (Del. 1983) (discussing the application of estoppel to an insurer). The doctrine of unclean hands "is a rule of public policy" that permits a court to refuse a request for equitable relief "in circumstances where the litigant's own acts offend the very sense of equity to which he appeals." *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 522 (Del. Ch. 1998) (citation omitted). And laches is an equitable defense that bars claims where the defendant has been prejudiced by a plaintiff's "unreasonable delay" in bringing suit. *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009).

As courts have explained, a contract that is void *ab initio* because it violates public policy may not be enforced through the application of equitable doctrines. *See, e.g., U.S. Bank Nat'l Ass'n v. Sun Life Assurance Co. of Canada,* No. 14-4703, 2016 WL 8116141, at *19 (E.D.N.Y. Aug. 30, 2016) ("*Van de Wetering*") (applying Delaware law and holding that estoppel and unclean hands defenses "are inapplicable to a STOLI policy which has been declared void *ab initio*"), *R. & R. adopted,* 2017 WL 347449 (E.D.N.Y. Jan. 24, 2017); *Sun Life Assurance Co. of Canada v. U.S.*

*Bank Nat'l Ass'n*, No. 14-62610, 2016 WL 161598, at *19-20 (S.D. Fla. Jan. 14, 2016) ("*Malkin*") (applying Delaware law and holding that estoppel and unclean hands defenses "fail as a matter of law" where they would result in enforcement of a contract that is void *ab initio*), *aff'd in part, rev'd in part on other grounds*, 693 F. App'x 838 (11th Cir. 2017); *Wilmington Sav. Fund Soc'y, FSB v. PHL Variable Ins. Co.*, No. 13-499-RGA, 2014 WL 1389974, at *12 (D. Del. Apr. 9, 2014) (dismissing promissory estoppel claim because "a contract that is void *ab initio* may not be enforced equitably through estoppel"); *Columbus Life Ins. Co. v. Wilmington Tr. Co.*, No. N19C-11-175, 2021 WL 537117, at *6, *9 (Del. Super. Ct. Feb. 15, 2021) ("*Kluener*") ("[I]f the Policy is determined void *ab initio*, it is clear that Delaware law does not allow for waiver and estoppel to revive it."); *Sun Life Assurance Co. of Canada v. Wilmington Tr., Nat'l Ass'n,* No. N17C-08-331, 2018 WL 3805740, at *3 (Del. Super. Ct. Aug. 9, 2018) ("*De Bourbon*") (striking estoppel defense because "a contract that is void *ab initio* may not be enforced equitably through estoppel"); *cf. Absalom Tr. v. Saint Gervais LLC*, No. 2018-0452-TMR, 2019 WL 2655787, at *3-4 (Del. Ch. June 27, 2019) ("Equitable defenses can validate voidable acts but not void acts."). To hold otherwise would frustrate the public policy that makes the contract unenforceable in the first place.

Employing equitable doctrines to prevent Columbus Life from challenging the validity of the Policy would also be contrary to the rationale underlying *Price Dawe*, if not its holding. That case also involved an insurer seeking a declaration that a life insurance policy was void. The owner of the policy contended that the insurer was prohibited from bringing a court challenge because the (statutorily-required) two-year contestability period set forth in the policy had expired. *Price Dawe*, 28 A.3d at 1063-68. The Delaware Supreme Court rejected that argument. It held that the insurer could challenge the enforceability of the policy because "[a] court may never enforce agreements void *ab initio*." *Id.* at 1067-68.

Here, Wilmington Trust puts forth its laches, estoppel, and unclean hands theories as defenses, which means they will only come into play if the Court has already determined that the Policy is void *ab initio*. But employing the doctrines of laches, estoppel, or unclean hands to prevent Columbus Life from challenging a void insurance policy is, under the reasoning of *Price Dawe*, essentially the same thing as enforcing the policy, which the Delaware Supreme Court says courts cannot do.

The doctrine of waiver likewise has no applicability here. It is a contract law doctrine that allows enforcement of a contractual promise notwithstanding the non-occurrence of a contract condition. *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 27 A.3d 522, 529-30 (Del. 2011) (discussing waiver). As explained above, if the Policy is void *ab initio*, this Court cannot enforce Columbus Life's contractual promise to pay the death benefit. *Cf. Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, No. 14-5789, 2016 WL 5746352, at *11-12 (D.N.J. Sept. 30, 2016) ("The Policy here is a violation of public policy and void *ab initio*. As such, there is no contract at all, and waiver . . . do[es] not apply." (applying New Jersey law)), *aff'd sub nom. Sun Life Assurance Co. of Canada v. Wells Fargo Bank NA*, 779 F. App'x 927 (3d Cir. 2019); *see also Kluener*, 2021 WL 537117, at *6 (holding that a void policy cannot be enforced through the doctrine of waiver).

In an effort to save its defenses, Wilmington Trust points to the district court's bench ruling in *Sun Life v. U.S. Bank*, No. 17-75-LPS, D.I. 29, 66:7-67:3, 76:3-6 (D. Del. Sept. 5, 2017) ("*Sol I*"), another STOLI case. Wilmington Trust correctly points out that, early in that case, the court denied an insurer's motion to strike a policy owner's waiver/estoppel and unclean hands defenses. *Id.* (citing *PHL Variable Ins. Co. v. ESF QIF Tr.*, No. 12-319-LPS, 2013 WL 6869803, at *6-7 (D. Del. Dec. 30, 2013) ("Griggs")). Later in the *Sol* case, the court granted partial summary judgment

to the insurer on the basis that the policy was void *ab initio* for lack of an insurable interest. *Sun Life Assurance Co. Canada v. U.S. Bank Nat'l Ass'n*, 369 F. Supp. 3d 601, 617 (D. Del. 2019) ("*Sol II*"), *reconsideration denied*, No. 17-75-LPS, 2019 WL 2052352 (D. Del. May 9, 2019) ("*Sol III*"). And after that, the court denied the policy owner's request to instruct the jury on its waiver/estoppel and unclean hands defenses. *Sun Life Assurance Co. Canada v. U.S. Bank Nat'l Ass'n*, No. 17-75-LPS, D.I. 287 Tr. of Jury Trial – Volume E at 1028-38 (May 24, 2019); *id.*, D.I. 267 (D. Del. May 28, 2019) (final jury instructions). Read together, the court's rulings in *Sol* are not inconsistent with my conclusion that the defenses of waiver, estoppel, and unclean hands are not applicable against an insurer's claim that a life insurance contract is void *ab initio* for lack of an insurable interest.

The combined rulings in *Sol* are not contrary to my recommendation that the Court strike Wilmington Trust's laches, waiver/estoppel, and unclean hands defenses. If the Policy on Mr. Romano's life is not void, Columbus Life loses, and Wilmington Trust does not need any defenses. If the Policy is void *ab initio*, the defenses are inapplicable. The defenses are therefore legally insufficient under any set of facts and, accordingly, I recommend that the Court strike them.

### B. Count III of Wilmington Trust's Counterclaims

Count III of Wilmington Trust's counterclaims, alleged in the alternative, is a claim for promissory estoppel. Columbus Life argues that the counterclaim should be dismissed. The dispute is not whether Wilmington Trust has sufficiently alleged the elements of a promissory estoppel claim, but rather whether the doctrine of promissory estoppel may be invoked against the issuer of a STOLI policy. I agree with Columbus Life that it cannot.

Promissory estoppel "is an equitable remedy designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement." *J.C.*

*Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 457 (D. Del. 2013) (quoting *Weiss v. Nw. Broad., Inc.,* 140 F. Supp. 2d 336, 344-45 (D. Del. 2001)). To state a claim for promissory estoppel, a plaintiff must plausibly allege the following: "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 876 (Del. Sept. 10, 2020) (quoting *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 347-48 (Del. 2013)). Under Delaware law, if there is a valid and enforceable contract, there is no claim for promissory estoppel. *See Mosiman v. Madison Companies, LLC*, No. 17-1517-CFC, 2019 WL 203126, at *4 (D. Del. Jan. 15, 2019) ("In other words, '[p]romissory estoppel does not apply . . . where a fully integrated, enforceable contract governs the promise at issue.'" (quoting *SIGA Techs.*, 67 A.3d at 348)).

If Columbus Life fails to prove that the Policy is unenforceable—that is, if a valid contract exists—then Wilmington Trust's promissory estoppel claim loses as a matter of law. So the question is: can the doctrine of promissory estoppel be invoked against an insurer on a policy that has been held to be unenforceable because it violates public policy? I don't think it can.

A claim for promissory estoppel requires a promise. If the promise that Wilmington Trust seeks to enforce is Columbus Life's promise in the life insurance contract that it will pay a $5 million death benefit upon Mr. Romano's death, the Court cannot enforce that promise. As explained above, a promise in a contract that is void *ab initio* "may never" be enforced by the Court. *Price Dawe*, 28 A.3d at 1067. Thus, Wilmington Trust's promissory estoppel claim is insufficient as a matter of law to the extent it seeks to enforce Columbus Life's contractual promise to pay the death benefit. *Wilmington Sav. Fund Soc'y*, 2014 WL 1389974, at *12; *De Bourbon*,

2018 WL 3805740, at *3; *Sun Life Assurance Co. of Canada v. Wilmington Tr., N.A.*, No. N18C-07-289, 2019 Del Super. LEXIS 2614, at *2 (Del. Super. Ct. Apr. 3, 2019) ("*Frankel*"); *Kluener*, 2021 WL 537117 at *8.

If Wilmington Trust's position is instead that Columbus Life made a separate, extra-contractual promise to pay the death benefit upon Mr. Romano's death so long as Wilmington Trust made premium payments, the Court cannot enforce that promise either. The most glaring problem with that theory is that any promise to pay a death benefit in return for premium payments would itself constitute an unenforceable, illegal wager on the life of Mr. Romano. Wilmington Trust does not have an insurable interest in Mr. Romano's life. If Columbus Life made a separate promise to pay Wilmington Trust a benefit upon his death in return for premium payments, that would amount to a separate illegal wager on human life, and a court "may never" enforce it. *Price Dawe*, 28 A.3d at 1067.

Wilmington Trust acknowledges that the Delaware state courts to consider the issue, and at least one judge in this district, have dismissed similar estoppel claims. But it points to two cases from this district that have allowed such claims to move forward. *See Griggs*, 2013 WL 6869803, at *6-7 (denying motion to dismiss promissory estoppel counterclaim); *Sun Life Assurance Co. Can. v. U.S. Bank Nat'l Assoc.*, No. 17-75 LPS, 2019 WL 2151695, at *6-7 (D. Del. May 17, 2019) ("*Sol IV*") (denying insurer's renewed motion for summary judgment on policy owner's promissory estoppel claim). What I will say about *Sol* and *Griggs* is this: I agree with their rationale that it may be unjust to allow an insurer that intends to challenge a policy to promise to an innocent policy owner that it will pay the death benefit, continue to collect premiums on the policy, and then later renege on that promise. *See Griggs*, 2013 WL 6869803, at *6, 8 (holding that promissory estoppel claim could proceed because "as a matter of equity, some relief must be

14

available" to a policy owner who is not *in pari delicto*); *see also Sol IV*, 2019 WL 2151695, at *5-6 (citing *Griggs*). I also agree with the *Sol* court that restitution may be appropriate under such circumstances. *Sun Life Assurance Co. Can. v. U.S. Bank Nat'l Assoc.*, No. 17-75 LPS, 2019 WL 8353393, at *3-5 (D. Del. Dec. 30, 2019) ("*Sol V*") (awarding restitution but not expectation damages under a promissory estoppel theory). As discussed in more detail below, the owner of an unenforceable STOLI policy may have a claim for restitution in certain circumstances, including where the insurer is more in the wrong than the policy owner. S*ee* Section III.C, *supra*; Restatement (Second) of Contracts § 198 (permitting restitution where party to unenforceable contract is not *in pari delicto*).

My narrow disagreement with *Sol* and *Griggs* relates to the theory under which restitution is available. As explained above, I do not think that restitution is available under a promissory estoppel theory because, in my view, a court may never enforce a promise to pay on a STOLI policy, or even a promise to perform a promise to pay on a STOLI policy.

I recommend that the Court dismiss Count III of Wilmington Trust's counterclaims.

### C. Count IV of Wilmington Trust's Counterclaims

Count IV, also brought in the alternative, seeks a return of all premiums paid on the Policy if it is declared void *ab initio*. Columbus Life argues that the counterclaim should be dismissed because parties to a STOLI policy declared void *ab initio* for lack of an insurable interest should be left where they are found without repayment of premiums.

The counterclaim should not be dismissed at this stage. I view the counterclaim as essentially a request for restitution. Columbus Life is correct that wrongdoers who are parties to an illegal contract "ordinarily" have no remedy against each other. *See, e.g., Della Corp. v. Diamond*, 210 A.2d 847, 849 (1965); *see also* Restatement (Second) of Contracts § 197 (1981).

But it does not dispute that an investor who made payments on a STOLI policy may obtain restitution from the insurer under certain circumstances. That is consistent with the Restatement of Contracts, the Restatement of Restitution and Unjust Enrichment, and the case law, all of which suggest that a party to a contract that is void for violating public policy can sometimes be required to pay restitution. *See* Restatement (Second) of Contracts § 198 (1981); Restatement (Third) of Restitution and Unjust Enrichment § 32 (2011); *Brighthouse Life Ins. Co. v. Geronta Funding*, No. N18C-04-028-DCS, 2019 WL 8198323, at *2-3 (Del. Super. Ct. Mar. 4, 2019) ("*Seck I*"); *interloc. certif. denied*, 2019 WL 8198324, at *2-3 (Del. Super. Ct. Mar. 14, 2019) ("*Seck II*").

The Restatement (Second) of Contracts § 198 provides, in pertinent part:

> A party has a claim in restitution for performance that he has rendered under or in return for a promise that is unenforceable on grounds of public policy if
>
> > (a) he was excusably ignorant of the facts . . . , in the absence of which the promise would be enforceable, or
> >
> > (b) he was not equally in the wrong with the promisor.

*See* Restatement (Second) of Contracts § 198; *see also* cmt. b (explaining that "[t]he general rule that neither party is entitled to restitution is subject to an exception in favor of a party who is not equally in the wrong, or as it is sometimes said is not *in pari delicto*, with the party from whom he seeks restitution," as provided in subsection (b)). Relying on that section of the Restatement, the Delaware Superior Court in *Seck* concluded that a party to a void life insurance policy may obtain restitution depending on the facts of the case. *Seck I*, 2019 WL 8198323, at *4 (denying insurer's motion for judgment on the pleadings on policy owner's claim for restitution because "further factual development is necessary to determine whether the exceptions in § 198, which would allow restitution, are applicable"); *cf. Sun Life Assurance Co. of Canada v. Wells Fargo Bank*, N.A., 208 A.3d 839, 858-59 (N.J. 2019) ("*Bergman*") (holding, under New Jersey law, that a litigant may be

able to recover premium payments made on a void STOLI policy depending upon "the relative culpability of the parties").[3]

The Delaware Supreme Court has yet to tell us whether and under what circumstances restitution can be recovered from an insurer when a policy is found to be an illegal STOLI policy. But federal courts applying Delaware law have consistently permitted requests for the return of premium payments, even if they weren't expressly styled as claims for restitution. *See, e.g.*, *Van de Wetering*, 2016 WL 8116141, at *19 (determining that policy owner was "entitled to a return of the premiums it paid out on the Policy" under Delaware law); *PHL Variable Ins. Co. v. Chong Son Pak Life Ins. Tr.*, No. 12-314-RGA, 2012 WL 13201401, at *1 (D. Del. July 25, 2012); *PHL Variable Ins. Co. v. Virginia L. Lankow Life Ins. Tr.*, No. 12-315-RGA, 2012 WL 13201402, at *1 (D. Del. July 25, 2012); *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Tr.*, 774 F. Supp. 2d 674, 682 (D. Del. 2011) (holding, pre-*Price Dawe*, that insurer could not simultaneously challenge

---

[3] The Restatement (Third) of Restitution and Unjust Enrichment § 32 similarly permits restitution under certain factual circumstances. It provides:

> A person who renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy may obtain restitution from the recipient in accordance with the following rules:
>> (1) Restitution will be allowed, whether or not necessary to prevent unjust enrichment, if restitution is required by the policy of the underlying prohibition.
>> (2) Restitution will also be allowed, as necessary to prevent unjust enrichment, if the allowance of restitution will not defeat or frustrate the policy of the underlying prohibition. There is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement.
>> (3) Restitution will be denied, notwithstanding the enrichment of the defendant at the claimant's expense, if a claim under subsection (2) is foreclosed by the claimant's inequitable conduct.

Restatement (Third) of Restitution and Unjust Enrichment § 32 (2011).

a policy as STOLI and seek to retain premiums); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 565 (D. Del. 2010) (same); *Sun Life Assurance Co. of Can. v. Berck*, 719 F. Supp. 2d 410, 419 (D. Del. 2010) (same); *cf. Sun Life Assurance Co. of Can. v. U.S. Bank Nat'l Assoc.*, No. 17-75-LPS, 2019 WL 8353393, at *1 (D. Del. Dec. 30, 2019). And there is little reason to think that the Delaware Supreme Court would hold that restitution would never be allowed.[4] As one court in this district has explained, if an insurance company could challenge the enforceability of the policy at any time while also retaining the premiums, "it would have the undesirable effect of incentivizing insurance companies to bring . . . suits as late as possible, as they continue to collect premiums at no actual risk." *Snyder*, 722 F. Supp. 2d at 565.

Wilmington Trust has plausibly alleged facts suggesting that it was "not equally in the wrong" with Columbus Life. *See* Restatement (Second) of Contracts § 198(b). It alleges that at the time it acquired the Policy, it was unaware it was a STOLI policy. (Ans., CC ¶¶ 28-29, 55, 61.) It also alleges that Columbus Life suspected that the Policy was illegal, but rather than inform Wilmington Trust of its suspicions, Columbus Life continued to collect premium payments from Wilmington Trust. (*Id.*) Those facts make it at least plausible that Columbus Life was more "in the wrong" than Wilmington Trust and that it would therefore be entitled to some amount of restitution under the circumstances set forth in § 198 of the Restatement.

Whether restitution is appropriate under the facts of this case, and how much,[5] is a fact issue not appropriate for resolution at the motion to dismiss stage. All that needs to be said now

---

[4] Contrary to Columbus Life's argument, *In re American International Group, Inc.* does not suggest that restitution is appropriate *only* where a party was either tricked or in a protected class. 976 A.2d 872, 883 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of Louisiana v. Gen. Re Corp.*, 11 A.3d 228 (Del. 2010).

[5] The parties dispute, for example, whether Wilmington Trust can recover premium payments made by its predecessors.

is that a request for restitution is plausibly alleged. I recommend that the Court deny Columbus Life's motion to dismiss Count IV.

### D.    Count V of Wilmington Trust's Counterclaims

Count V alleges negligent misrepresentation. Wilmington Trust contends that Columbus Life implicitly represented—by billing for premiums, by approving beneficiary changes, and by sending reports—that the Policy was valid even though it never intended to pay. I agree with Columbus Life that the counterclaim, as pleaded, fails to state a claim of negligent misrepresentation.

To assert a claim for negligent misrepresentation under Delaware law, a plaintiff must plead that "(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff[s] suffered a pecuniary loss caused by justifiable reliance upon the false information.'" *Otto Candies, LLC v. KPMG LLP*, No. 2018-0435-MTZ, 2019 WL 994050, at *17 (Del. Ch. Feb. 28, 2019) (quoting *Steinman v. Levine*, No. 19-107, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002), *aff'd,* 822 A.2d 397 (Del. 2003)). However, where a contract governs the parties' relationship, a tort claim cannot be maintained unless it arises from a duty independent of the contractual duty. *Audubon Eng'g Co., LLC v. Int'l Procurement & Contracting Grp., LLC*, No. 13-1248-LPS, 2015 WL 4084053, at *4 (D. Del. July 6, 2015), *aff'd,* 647 F. App'x 95 (3d Cir. 2016) ("[U]nder Delaware law, . . . the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract.'" (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009))).

In this case, the relationship between the parties arose from the Policy. The alleged damages are Wilmington Trust's costs to acquire the Policy and to perform under it.[6] Insofar as the alleged misrepresentations are Columbus Life's implicit suggestions that it intended to pay out on the Policy, such misrepresentations, *at best*, amount to statements by Columbus Life that it intended to perform under the contract, as opposed to refrain from challenging its validity.[7] If the contract were enforceable, Wilmington Trust could not bring a negligent misrepresentation claim to recover damages for Columbus Life's failure to perform. Any determination by this Court that the Policy is unenforceable does not change the fact that Columbus Life's duty to be accurate about whether it intended to perform, if any, arose from the parties' relationship under the Policy. I think it is exceedingly unlikely that the Delaware Supreme Court would recognize a negligent misrepresentation claim where the defendant's only duty to the plaintiff arose from a contract that was later determined to be void *ab initio*. Stated another way, I do not believe that Delaware law permits a policyholder to recover in tort economic damages incurred as the result of performing an illegal contract if the reason the damages are not recoverable in contract is because the contract is unenforceable.[8]

Wilmington Trust alternatively contends that Columbus Life made negligent misrepresentations when it sent notices that suggested that the policy on Mr. Romano's life was valid, *i.e.,* not STOLI. However, Wilmington Trust does not go so far as to say that insurance

---

[6] (*See* Ans., CC ¶ 71 (alleging costs to purchase the Policy and premiums to keep the Policy in effect).)

[7] (*See* D.I. 28 (Wilmington Trust's Ans. Br.) at 7-10.)

[8] Moreover, it is unclear to me what Wilmington Trust could recover from its negligent misrepresentation counterclaim that it could not recover with a claim for restitution, which appears to be a more appropriate form of relief.

companies have a duty to ferret out illegal STOLI policies and to assure downstream owners that policies are not STOLI. That is, Wilmington Trust does not say that Columbus Life had a duty to discover the illegality of the policy earlier and was negligent for not doing so. Rather, Wilmington Trust contends that Columbus Life *actually knew* for many years that the policy on Mr. Romano's life was void and that it told Wilmington Trust the opposite. (Tr. 14:21-22:1.) But that does not sound like negligence; that sounds like fraud. Wilmington Trust has not pleaded fraud (Tr. 17:14-18:10), and I have not considered whether a fraud claim could be maintained on the facts alleged.

I recommend that the Court dismiss Count V, Wilmington Trust's counterclaim for negligent misrepresentation. If Wilmington Trust later discovers facts that would support a negligent misrepresentation claim—or a fraud claim—it can seek leave to amend its pleading at that time.

## V.     CONCLUSION

In sum, I recommend the following:

1.      Columbus Life's Motion to Strike Wilmington Trust's Affirmative Defenses (D.I. 16) should be GRANTED. The Court should strike Wilmington Trust's Second, Third, and Fourth Defenses.

2.      Columbus Life's Motion to Dismiss Wilmington Trust's Counterclaims (D.I. 15) should be GRANTED-IN-PART and DENIED-IN-PART.

      a.      The Court should dismiss Counterclaim Count III.

      b.      The Court should not dismiss Counterclaim Count IV.

      c.      The Court should dismiss Counterclaim Count V.

3. Wilmington Trust should be granted leave to amend its Answer and Counterclaims within 30 days. Although some of its counterclaims are deficient as a matter of law on the facts alleged, the Court is unable to say on this record that any amendment would necessarily be futile.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: May 6, 2021

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE